UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


| | | |
|---|---|---|
| ANDREA D. PYLANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:05-CV-0379-G |
| HARTFORD LIFE AND ACCIDENT | ) | |
| INSURANCE COMPANY, ET AL., | ) | **ECF** |
| | ) | |
| Defendants. | ) | |


## MEMORANDUM OPINION AND ORDER

Before the court are the cross motions for summary judgment of the plaintiff

Andrea Pylant ("Pylant") and the defendants Hartford Life and Accident Insurance

Company ("Hartford") and The First American Corporation Group Life, Medical,

Dental, Disability Benefits Trust No. 502 ("Plan").  For the reasons stated below, the

defendants' motion is granted and Pylant's motion is denied.

## I.  BACKGROUND

### A.  Overview of the Facts

This is an action for review of the termination of long-term disability benefits

by the administrator of an employee welfare benefit plan governed by the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*.  In

September of 2000, Pylant began work as a technical writer for First American

Financial Corporation ("First American").  Brief in Support of Plaintiff's Motion for

Summary Judgment ("Pylant's Brief") at 2.  She remained there until November of

the following year.  *Id*.  In February 2002, Pylant filed a claim for disability after she

was diagnosed with chronic fatigue, Epstein Barr, cytomegalovirus, and psoriatic

arthritis.  *Id*. at 6.  Pylant's claim was approved on May 30, 2002, and she began

receiving long-term disability ("LTD") benefits (effective as of March 21, 2002).  *Id*.

at 2; Defendants' Brief in Support of Their Motion for Summary Judgment

("Hartford's Brief") at 7.  On January 28, 2004, however, Hartford wrote Pylant to

inform her that her LTD payments would be terminated, effective February 1, 2004.

Pylant's Brief at 16.  Pylant appealed this decision, but Hartford upheld its previous

termination of benefits based on its conclusion that she was no longer disabled.  *Id*. at

2, 9.  On February 24, 2005, Pylant filed this case, challenging Hartford's denial of

LTD benefits.  Docket Sheet.  On October 28, 2005, Pylant and the defendants filed

these cross motions for summary judgment.  *Id*.

B.  <u>Summary of Pylant's Approval, Denial, and Appeal</u>

In early November of 2001, Pylant stopped working as a technical writer for

First American because of fatigue and pain.  Pylant's Brief at 6.  She received a

diagnosis of psoriatic arthritis in early January of the following year from her treating

- 2 -

rheumatologist, Dr. Don Cheatum ("Dr. Cheatum"). *Id*. at 12. Pylant had

previously qualified for short-term disability benefits effective November 15, 2001,

but Hartford referred Pylant's claim to long term disability in February 2002 to

determine her continued eligibility for benefits. Hartford's Brief at 3. Pylant

informed Hartford, in response to a questionnaire, that her primary physicians were

her family physician Dr. Kathleen Humphries ("Dr. Humphries") and Dr. Cheatum.

*Id*. at 4. In her first Attending Physician Statement ("APS"), Dr. Humphries opined

that Pylant could stand for a "short time," walk for "short trips" of less than 100 feet,

sit for one to two hours a day, but "not in 1 block," and that Pylant could never lift,

reach, work overhead, push or pull. *Id*. Dr. Humphries also opined that Pylant could

use a keyboard for less than fifteen to twenty minutes at a time. *Id*. In Dr.

Cheatum's first APS, he stated that Pylant could stand, walk, and sit, but she needed

the opportunity to move around frequently due to stiffness. *Id*. at 5. Dr. Cheatum

also concluded that Pylant could lift or carry less than ten pounds, drive a vehicle,

and use a keyboard as long as she could "take breaks as needed." *Id*. Hartford also

conducted a phone interview with Pylant in late March of 2002. *Id*. In that

interview, Pylant stated she was unable to do her job because of her inability to sit for

very long. *Id*. Because she was "on the couch 24/7," she could not do much and her

mother did everything for her family. *Id*.

First American gave Hartford a description of Pylant's occupation as a technical writer, indicating that she was required to sit for up to eight hours, occasionally lift or carry up to ten pounds, occasionally push or pull up to twenty pounds, reach for books or into file drawers while sitting, and use a "computer keyboard and mouse at a fairly constant level of activity."  Hartford's Brief at 6. Hartford then had a rehabilitative specialist compare this job description with that of a technical writer in the national economy.  *Id*.; *see also* Appendix to Defendants' Brief in Support of Their Motion for Summary Judgment ("Hartford's Appendix") at 484-88 (basing job description in national economy on Department of Labor's Dictionary of Occupational Titles, 1991 ed.).  This specialist determined that, while Pylant's particular position was a light duty position, a technical writer in the general workplace was a sedentary duty position.  *Id*.  Based on this information, Pylant's own statements, and the opinions of her primary physicians, Hartford determined on May 30, 2002, that Pylant was eligible for LTD benefits.  *Id*. at 6-7.

In October 2002, Hartford decided to evaluate Pylant's continued eligibility for LTD benefits.  Hartford's Brief at 7.  Pylant submitted an APS and Physical Capabilities Evaluation Form ("PCE") from Dr. Humphries as well as a Claimant Questionnaire completed by herself.  *Id*.  On the basis of this information, Hartford determined that Pylant continued to qualify for LTD benefits.  *Id*.

In June of 2003, Hartford again reviewed Pylant's eligibility for LTD benefits. Hartford's Brief at 8.  Pylant submitted a Claimant Questionnaire in which she stated that she had "trouble using [her] hands" and on "some days" she could not use her right arm at all.  *Id*.  Typical days involved her helping her children get ready for school, napping, and assisting in home chores.  *Id*.  Despite these problems, Pylant occasionally attended church and her children's sporting activities and could perform almost all activities of daily living without assistance.  *Id*.  Around the same time, Hartford received an APS and PCE from Dr. Humphries.  Pylant's physician provided a divergent account of her abilities, stating that Pylant could never drive a vehicle and could only sit, stand, or walk for less than fifteen minutes at a time.  *Id*.  Based on this discrepancy, Hartford's claims examiner referred Pylant's claim to Hartford's Special Investigations Unit ("SIU") for further fact-gathering.  *Id*. at 8-9.

In late August of 2003, Hartford's SIU hired Dempsey Investigations to perform video surveillance of Pylant's daily activities.  Hartford's Brief at 9.  For two days, Dempsey Investigations videotaped Pylant near her home and her child's school.  *Id*.; *see also* DVD copy of video surveillance *attached to* Hartford's Appendix as Exhibit 1B.1.  Pylant was observed driving her children to school, removing a child weighing in excess of twenty pounds from the rear of her car, and then carrying that child with both hands into her home.  Hartford's Brief at 9.  Another day, Pylant drove to her children's school, sat in her vehicle for more than ten minutes while

moving around, leaned into the passenger seat to adjust the seat, used her right arm over the seat to attend to her infant, and picked up the same infant with both hands while lifting her over the seat. *Id.* Later in the video (and on the same day), Pylant exited the vehicle while carrying the child and spent approximately eighteen minutes standing, rocking, and carrying the child. *Id.* She was also observed bending over at the waist to pick up an item that had fallen to the ground. *Id.*

Based on this surveillance, which contradicted the opinions of both Pylant and her physician regarding her functionality, SIU conducted an in-person interview with Pylant. Hartford's Brief at 9. During this two-hour interview, the investigator did not note any cognitive or concentration problems, nor did the investigator notice any sort of pain indicators. *Id.* Pylant informed the investigator that she was not taking any prescription medications and, declining to view the video, admitted that she was readily capable of performing the activities seen during the surveillance. *Id.* at 9-10. Pylant also stated that she had limitations (*viz.*, walk a maximum of fifteen minutes, stand a maximum of five to ten minutes, lift/carry items weighing a maximum of ten pounds, no overhead lifting with her right arm, little grip strength in hands/fingers, and type only five minutes at a time), but had absolutely "no limitations or restrictions" on how long she could sit. *Id.* at 10.

In September of 2003,[1] Hartford requested that Pylant submit another Claimant Questionnaire and have her treating physician complete another APS and PCE. Hartford's Brief at 10. Hartford was reevaluating whether Pylant continued to be eligible for LTD benefits; after March 21, 2004, Pylant would have to be totally disabled from any occupation in order to qualify. *Id.* Pylant's Claimant Questionnaire stated she could not drive longer than fifteen minutes, was unable to sit, stand or walk for more than fifteen minutes (contradicting her statement in her interview that she had no limitations on sitting), and had experienced increased pain in her joints. *Id.* at 11. Pylant also informed Hartford that she required more rest, could not use her right arm and hand at all, and needed assistance with bathing and using the toilet. *Id.* The APS and PCE were submitted in this instance by Dr. Cheatum. *Id.* In these documents, Dr. Cheatum opined that Pylant could sit, stand, walk, and drive for approximately an hour at a time, could occasionally lift, carry, push and pull up to ten pounds, could reach above shoulder level and at and below waist level, and could handle, finger, and feel. *Id.* Dr. Cheatum did state, however, that Pylant was unable to return to work and could never climb, balance, stoop, kneel, crouch, or crawl. *Id.*

After receiving these documents, Hartford sent both Drs. Humphries and Cheatum copies of the surveillance video and the in-person interview with Pylant.

---

[1]       Hartford's brief identifies the date as September 22, 2005, but the court assumes this is merely a typographical error and that the intended date is 2003.

Hartford's Brief at 11.  Hartford requested their opinions, based upon their contact

with Pylant and the surveillance video and interview, on whether Pyland could return

to work with the following limitations:

> (1) sitting with periodic position changes or stretch breaks;

> (2) no prolonged periods of walking or standing;

> (3) occasionally reach overhead without repetition;

> (4) frequently reach at and below waist level;

> (5) occasionally lift/carry and push/pull 11-20 pounds and frequently lift/carry and push/pull 1-10 pounds;

> (6) constantly handle and feel[2] such as handling and sorting documents and handling a phone and frequently finger.  She should be allowed to take periodic rest breaks from any keyboarding or repetitive upper extremity activity; and

> (7) occasionally to frequently climb, stoop, kneel or crouch or balance.

*Id*.  Dr. Humphries called a Hartford representative and left a voicemail stating that

she agreed Pylant could return to work with the stated limitations.  *Id*. at 12.

Although Hartford attempted to follow up on the voicemail, it could not contact Dr.

Humphries.  *Id*.  Instead, Dr. Humphries sent Hartford a letter requesting that, in the

future, Hartford should contact Dr. Cheatum with questions regarding Pylant's

---

[2]       Although quoted as "file" in Hartford's brief requesting summary judgment, the cited appendix submitted with the brief used the term "feel." Hartford's Appendix at 363.

disability.  *Id*.  Dr. Cheatum responded to Hartford's request by stating that Pylant

could return to work on a full-time basis with the restrictions stated above.  *Id*.  Based

upon these opinions and all information contained in Pylant's file, Hartford notified

Pylant that further benefits would not be payable beyond January 31, 2004.  *Id*.

Later that year, Pylant obtained legal representation and appealed Hartford's

discontinuation of her LTD benefits.  Hartford's Brief at 12-13.  After meeting with

Pylant's attorney -- and seeing the surveillance video for the first time -- Dr. Cheatum

retracted his earlier opinion provided to Hartford.  *Id*. at 13.  Stating that Pylant

appeared to be in pain in the video, he opined that she was "chronically disabled" and

was incapable of performing most normal activities as he "had been led to believe by

the representative of the insurance company."  *Id*.  Dr. Cheatum opined that Pylant

was unable to perform a sedentary occupation and was taking medications that

affected her cognitive function, although did not identify which medications.  *Id*.

As part of Pylant's appeal, Hartford referred Pylant's claim to Dr. David Trock

("Dr. Trock") for independent medical review.  Hartford's Brief at 13-14.  A board

certified physician in rheumatology and internal medicine, Dr. Trock reviewed

Pylant's medical records and surveillance video, and contacted Drs. Humphries and

Cheatum.  *Id*. at 14.  Although neither physician responded to Dr. Trock, he

concluded that Pylant was able to return to work in a sedentary capacity with the

following restrictions:

(1) sitting with periodic position changes or stretch breaks;

(2) no prolonged periods of walking or standing;

(3) occasionally reaching overhead without repetition;

(4) frequently reach at and below the waist level;

(5) occasionally lift or carry, push or pull 11 to 20 lbs. and frequently lift/carry, push/pull 1 to 10 lbs.;

(6) constantly handle and feel such as handling or sorting documents, handling of phone or dialing.  She should be able to take periodic rest breaks from any keyboarding or repetitive upper extremity activity;

(7) occasionally to frequently climb, stoop, kneel, crouch, or balance.

*Id*.  Based upon this independent review in conjunction with Pylant's entire file, Hartford decided to uphold its termination of Pylant's LTD benefits.  *Id*.

## II.  ANALYSIS

### A.  Evidentiary Burdens on Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); see also *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986).  The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn*

*Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).  Nonetheless, summary judgment is a drastic remedy that should be used cautiously.  *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980).

While all of the evidence must be viewed in a light most favorable to the nonmovant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's summary judgment burden.  *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  The movant makes such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex*, 477 U.S. at 323; *Lindsey v. Sears Roebuck and Company*, 16 F.3d 616, 618 (5th Cir. 1994) ("When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial."); *Fontenot*, 780 F.2d at 1194 ("[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the

- 11 -

claim or defense to warrant judgment in his favor.") (emphasis in original).[3]  The

pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no

genuine issue of material fact exists.  FED. R. CIV. P. 56(c).

If the movant makes this showing, the nonmovant must then direct the court's

attention to evidence in the record sufficient to establish that there is a genuine issue

of material fact for trial.  *Celotex*, 477 U.S. at 323-24.  To carry this burden, the

"opponent must do more than simply show . . . some metaphysical doubt as to the

material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475

U.S. 574, 586 (1986).  Instead, the nonmovant must show that the evidence is

sufficient to support a resolution of the factual issue in its favor.  *Anderson*, 477 U.S.

at 249.  The nonmovant cannot survive a motion for summary judgment by merely

resting on the allegations in its pleadings.  *Isquith for and on behalf of Isquith v. Middle*

*South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988);

see also *Celotex*, 477 U.S. at 324.

B.  Pylant's and Hartford's Motions for Summary Judgment

1.  *Interpretation of the Term "Your Occupation"*

As an initial matter, Pylant argues that Hartford was incorrect when

determining whether she qualified for LTD benefits using its definition of the term

---

[3]      Pylant, as the movant for summary judgment on her claims, is also the
party with the burden of proof at trial.  The burden on her motion for summary
judgment, therefore, consists of more than simply pointing out deficiencies in her
opponent's case; instead, she must establish her right to relief as a matter of law.

"Your Occupation."  Brief in Support of Plaintiff's Response to Defendant's [sic]

Motion for Summary Judgment ("Pylant's Response") at 10-17.  A court uses a

two-step analysis in determining whether a plan administrator abused its discretion in

construing plan terms.  *Rhorer v. Raytheon Engineers and Constructors, Inc.*, 181 F.3d

634, 639 (5th Cir. 1999).  The court first determines the legally correct

interpretation of the plan and whether the administrator's interpretation accords with

the proper legal interpretation.  *Id*.  If the administrator's construction is legally

sound, then no abuse of discretion occurred and the inquiry ends.  *Id*. at 639-40.  If,

however, the court concludes that the administrator has not given the plan the legally

correct interpretation, the court must determine whether the administrator's

interpretation constitutes an abuse of discretion.  *Id*. at 640.  Factors to consider

when determining the legally correct interpretation of the plan include:  "(1) whether

a uniform construction of the [plan] has been given by the administrator; (2) whether

the interpretation is fair and reasonable; and (3) whether unanticipated costs will

result from a different interpretation of the [plan]."  *Lain v. UNUM Life Insurance

Company of America*, 279 F.3d 337, 344 (5th Cir. 2002).

Here, Pylant challenges whether Hartford properly interpreted the term "Your

Occupation" as defined in the Plan, arguing that "this term means the occupation

(the set of essential duties) as recognized in the general workplace," rather than

Hartford's construction using Department of Labor definitions and seven functional

limitations.  Pylant's Response at 10.  Hartford responds that its interpretation of the term "Your Occupation" is not only consistent with its previous interpretations, but a fair and reasonable construction.  Defendants' Reply Brief in Support of Their Motion for Summary Judgment ("Hartford's Reply") at 8-14.

The Plan defines "disability" as a condition wherein "you are prevented . . . from performing one or more of the Essential Duties of Your Occupation." Hartford's Brief at 2 (citing Hartford's Appendix at 49).  "Your Occupation" is "your occupation as it is recognized in the general workplace.  Your Occupation does not mean the specific job you are performing for a specific employer or at a specific location."  *Id*. (citing Hartford's Appendix at 51).  Using the analysis as described above, Pylant challenges only the first two steps: namely, whether there has been a uniform interpretation of the Plan, and whether Hartford's interpretation was fair and reasonable.  Pylant's Response at 12-14 (noting "Plaintiff contends that the third factor is not relevant in the present consideration").

Arguing that Hartford neglected to give the term "Your Occupation" a uniform construction, Pylant relies on the allegation that Hartford "fail[ed] to produce such information in accordance with the ERISA regulations during the administrative proceeding" and therefore it should be "assumed" that Hartford's interpretation has not been consistent.  Pylant's Response at 12.  Pointing the court to a similar case wherein the court upheld Hartford's interpretation of the term "Your Occupation"

using the Department of Labor's Dictionary of Occupational Titles to define jobs in

the general marketplace, Hartford argues that it interprets the provision consistently

-- using Department of Labor definitions.[4]  *See* Hartford's Reply at 10-12 (citing

*Richards v. Hartford Life and Accident Insurance Company*, 356 F. Supp. 2d 1278 (S.D.

Fla. 2004), *aff'd*, 153 Fed. Appx. 694 (11th Cir. Nov. 3, 2005)).  With both sides

providing arguments regarding Hartford's uniformity, but without conclusive

evidence from either, the court determines that this factor in the analysis weighs

neither for nor against either party.

The next step in the analysis -- which is dispositive of the legal correctness of

Hartford's interpretation -- involves a determination of whether Hartford's

construction was fair and reasonable.  Another court has held that Hartford properly

evaluated an employee's ability to perform her job "as it is generally recognized in the

workforce," rather than analyzing the particular tasks of the employee's position.

*Richards*, 356 F. Supp. 2d at 1286-87.  In addition, the *Richards* court found that

reference to the Department of Labor's Dictionary of Occupational Titles was

appropriate because "insurers issuing disability policies 'cannot be expected to

anticipate every assignment an employer might place upon an employee outside the

_____

[4]      Hartford also contests Pylant's assertion that it neglected to provide a
complete administrative record to both the plaintiff and the court.  Hartford's Rely at
5-6; *see also* Declaration of Christopher B. Davis, *attached to* Hartford's Appendix at
Tab 1.  The court makes no finding regarding either parties' position, noting only
that this issue is not determinative of the case.

usual requirements of his or her occupation.'"  *Id*. at 1287 (quoting *Ehrensaft v. Dimension Works Inc., LTD Plan*, 120 F. Supp. 2d 1253, 1259 (D. Nev. 2000)).  The court agrees with the decision in *Richards*; Hartford's consideration of Department of Labor definitions for Pylant's position as a technical writer was reasonable in this instance to define the term "Your Occupation".  Finally, although Pylant argues that Hartford's inclusion of "functional limitations" in the definition of her occupation was legally incorrect, Pylant's Response at 10, the court disagrees.  Courts have consistently upheld administrative claim denials where medical evidence indicates that some limitations would enable the employee to perform sedentary work.  *Id*. (listing cases in which courts upheld denials where the claimants would be required to shift positions as needed); see also *Walker-Stewart v. Federal Express Corp.*, No. H-04-2187, 2005 WL 1185799, at *7 (S.D. Tex. Apr. 20, 2005) (upholding denial of benefits when treating physician and occupational therapist cleared plaintiff for work with restrictions); *McSperitt v. Hartford Life Insurance Co.*, 393 F. Supp. 2d 418, 428 (N.D. Tex. 2005) (Fish, C.J.) (had the plaintiff asserted an ERISA claim, there would have been no abuse of discretion in denying LTD benefits when physician "consistently stated that [plaintiff] was capable of performing a sedentary job with some limitations"); *Graham v. L&B Realty Advisors, Inc.*, No. 3:02-CV-0293-N, 2003 WL 22388392, at *3-4 (N.D. Tex. Sept. 30, 2003) (Godbey, J.) (upholding denial where physician cleared plaintiff for work with restrictions).  Accordingly, the court

- 16 -

finds that Hartford's interpretation of the term "Your Occupation" was fair and
reasonable.  Because neither party contested the third factor, the court finds that
Hartford's construction was legally correct.  Concluding the analysis, the court finds
that Hartford did not abuse its discretion when interpreting the Plan's definition of
"Your Occupation" for Pylant's claim.

## 2.  *Termination of LTD Benefits*

The court next turns to Hartford's application of the facts to its legally correct
interpretation.  In analyzing a claim for benefits allegedly due under an ERISA plan,
the district court reviews the plan administrator's determination for abuse of
discretion when the plan expressly gives the administrator discretionary authority.[5]
*Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir. 2004); see also
*Adams v. UNUM Life Insurance Company of America*, No. H-04-2179, 2005 WL
2030840, at *32 (S.D. Tex. Aug. 23, 2005) (noting that the standard of review for
termination of previously granted benefits is the same).  If an administrator's decision

---

[5]       In this context, the "abuse of discretion" standard is synonymous with
the "arbitrary and capricious" standard.  See *Meditrust Financial Services Corporation v.
Sterling Chemicals, Inc.*, 168 F.3d 211, 214 (5th Cir. 1999) ("[T]here is only a
'semantic, not a substantive, difference' between the arbitrary and capricious and the
abuse of discretion standards in the ERISA benefits review context.").  "A decision is
arbitrary if there is no rational connection between the known or found facts and the
evidence in the record."  *Matney v. Hartford Life & Accident Insurance Company*, No. 05-
10506, 2006 WL 775129, at *1 (5th Cir. Mar. 27, 2006) (per curiam) (citing
*Meditrust*, 168 F.3d at 215).  Both parties agree that "abuse of discretion" is the
proper standard to apply in this instance.  *See* Pylant's Brief at 19-20; Defendants'
Brief in Support of its Response to Plaintiff's Cross-Motion for Summary Judgment
("Hartford's Response") at 3.

is supported by substantial evidence, the court must affirm that decision.  *Ellis v. Liberty Life Assurance Company of Boston*, 394 F.3d 262, 273 (5th Cir. 2004), *cert. denied*, ___ U.S. ___, 125 S. Ct. 2941 (2005).[6]  However, if there is a potential conflict of interest, the abuse of discretion inquiry is altered.  *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287, 297 (5th Cir. 1999).  Here, because Hartford is both the insurer and the administrator, Hartford's decision is afforded "only a modicum less deference" than it would receive in other circumstances.  *Vega*, 188 F.3d at 301; see also *Matney*, 2006 WL 775129, at *1(finding that since there was "no evidence of a conflict other than Hartford's position as both the insurer and the administrator," Hartford's decision is afforded "only a modicum less deference" than it would otherwise receive).[7]

---

[6]     "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ellis*, 394 F.3d at 273.

[7]     Pylant argues that there is evidence in the administrative record beyond that mentioned above indicating that Hartford has a conflict of interest in this case. *See* Pylant's Brief at 32-36 (noting that Hartford "did something" to Pylant's general physician, misrepresented the surveillance video to Pylant's rheumatologist, and neglected to provide a full administrative record).  Hartford disputes each allegation. Hartford's Response at 5-6.  The court acknowledges these arguments, but determines that they are not sufficient to "slide further down the scale" of deference to Hartford. See *MacLachlan v. ExxonMobil Corporation*, 350 F.3d 472, 479-80 (5th Cir. 2003) (affirming decision of district court not to reduce deference given to administrator's determination based upon an "unsubstantiated claim that the administrator was conflicted"), *cert. denied*, 541 U.S. 1072 (2004).  There is no concrete evidence that Hartford "did something" to Pylant's doctor.  Beyond an allegation by Pylant herself that is noted in Hartford's records, Pylant relies on the fact that Dr. Humphries did
(continued...)

Having reviewed the administrative record in this case, and keeping in mind the deferential standard of review, the court is of the conclusion that Hartford did not abuse its discretion in terminating Pylant's benefits.[8]  Rather than basing its decision on a single piece of evidence, Hartford denied Pylant's claim for LTD benefits for multiple reasons:  Pylant's own treating physicians stated that she could return to work as a technical writer -- a sedentary job as defined by the Department of Labor; Pylant's own statements regarding her condition and limitations indicated she did not meet the definition of disabled as defined by the Plan; Dr. Cheatum's stated limitations for Pylant's activities indicated she could perform the essential duties of

---

[7](...continued)
not return Hartford's calls.  Pylant's Brief at 32.  Given that general physicians are often incredibly busy, that Dr. Humphries ultimately agreed with Hartford's opinions regarding Pylant's alleged disability, and that Dr. Humphries referred Hartford to Dr. Cheatum -- a rheumatologist with presumably more expertise involving Pylant's condition, this is hardly conclusive.  Regarding Dr. Cheatum's reversal of opinion after being contacted by Pylant's attorney, Pylant can hardly say that Hartford "misrepresented" the contents of the surveillance video when it provided the video to Dr. Cheatum for his review before he rendered his first opinion.  Hartford's Response at 5; Pylant's Brief at 16.  Finally, although Pylant claims that Hartford failed to provide the full administrative record, Hartford vehemently denies this allegation. Hartford's Response at 5-6; *see also* Declaration of Christopher B. Davis (appeal specialist of Hartford affirming that the submitted documents "comprise the entire Administrative Record involving the application for long-term disability benefits and in reconsideration of [Pylant's] claim").  Absent evidence that Hartford secreted relevant documents, the court cannot conclude that Hartford's determination deserves less deference than the "modicum less" normally afforded.

[8]        When ERISA interpretation does not require sophisticated analysis, the court is not necessarily required to engage in the two-step review set forth above. *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1307 n.3 (5th Cir. 1994).

her occupation; video surveillance of Pylant showed a mobile person capable of

performing in a sedentary occupation; and an independent physician opined that

Pylant could return to work with seven functional limitations previously agreed to by

Dr. Cheatum.[9]  Hartford's Brief at 17-18.  Viewing all evidence in a light most

favorable to Pylant, the court cannot find that Hartford abused its discretion because

Hartford based its determination of Pylant's eligibility for LTD benefits on

substantial evidence.[10]  See *Magee v. Life Insurance Company of North America*, 261

---

[9]     Pylant argues that Hartford abused its discretion by relying on an
opinion by Dr. Trock that did not explicitly conclude that Pylant could perform her
essential duty of keyboarding.  Pylant's Brief at 26-31 (referring to keyboarding duty
alternatively as "fingering").  Parsing language, Pylant argues that Dr. Trock's opinion
that Pylant could "constantly handle and feel. . . .  She should be able to take
periodic breaks from any keyboarding or repetitive upper extremity activity," Pylant's
Brief at 10 n.4, "did not comment on fingering at all except that breaks must be
taken with any fingering."  *Id*. at 27.  Although literally true, Dr. Trock's opinion
clearly implies that frequent keyboarding is possible: the description "constantly
handle and feel" is within the same limitation/bullet point as the comment regarding
keyboarding breaks and keyboarding could easily be considered as falling within the
same category of activity as "handl[ing] and feel[ing]."  In addition, even if this point
was debatable, both Drs. Humphries and Cheatum agreed with these limitations
when they opined that Pylant was able to return to work as a technical writer who
frequently keyboards.  Hartford's Response at 12.

[10]    The court notes Pylant's argument that, on appeal, her treating
physician changed his opinion regarding her functionality.  Pylant's Brief at 9.  The
court finds, however, that Hartford was reasonable -- when deciding Pylant's claim for
LTD benefits -- in relying on its independent physician's analysis, investigator's
report and video, and other evidence in the administrative record.  A treating
physician's determination is not accorded greater weight, *Black & Decker Disability
Plan v. Nord*, 538 U.S. 822, 834 (2003) ("[C]ourts have no warrant to require
administrators automatically to accord special weight to the opinions of a claimant's
physician; nor may courts impose on plan administrators a discrete burden of

(continued...)

F. Supp. 2d 738, 749-51 (S.D. Tex. 2003) (upholding denial of benefits to employee in sedentary occupation based upon, among other things, disability questionnaire stating plaintiff could take care of personal needs; a physical ability assessment concluding plaintiff could perform duties, but not work extended shifts; and independent medical review); *Sweatman v. Commercial Union Insurance Co.*, 39 F.3d 594, 601-03 (5th Cir. 1994) (finding no abuse of discretion when administrator relied on an independent review of medical records and hired an investigator to interview plaintiff); *Goldman v. Hartford Life and Accident Insurance Co.*, ___ F. Supp. 2d ___, No. 03-0759, 2006 WL 461857, at *17 (E.D. La. Feb. 23, 2006) (upholding decision to deny benefits based on treating physician's agreement with independent doctor's conclusion -- based upon review of medical records -- that plaintiff was capable of light duty work); *Gooden*, 250 F.3d at 335 (finding administrator did not unduly rely on independent physician's conclusion who did not examine plaintiff or speak with treating physicians, but instead rendered opinion based on review of

---

[10](...continued)
explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."), particularly when the physician's conclusion changes dramatically after speaking with the plaintiff's attorney and the physician allegedly never reviewed the video upon which his original opinion was supposedly based.  See *Gooden v. Provident Life and Accident Insurance Co.*, 250 F.3d 329, 333-34 (5th Cir. 2001) (finding that administrator did not abuse its discretion by not giving conclusive effect to treating physician's opinion that claimant was disabled, when that opinion was contrary to the physician's previous analysis, was offered after plaintiff discovered he was to be terminated, and was unaccompanied by evidence that plaintiff's medical condition had changed from the time of the most recent analysis).

- 21 -

medical records and treating physician's notes); *Noble v. Ingalls Shipbuilding*, No. 1:04-CV-577, 2006 WL 839519, at *4 (S.D. Miss. Mar. 29, 2006) (finding no abuse of discretion when administrator relied on independent consultant's opinions even though they contradicted the opinions of the plaintiff's treating physicians); *McGarrah v. Hartford Life Insurance Co.*, 234 F.3d 1026, 1032 (8th Cir. 2000) (finding that administrator did not abuse discretion by denying benefits based upon a videotape showing plaintiff "performing activities inconsistent with a claim of continuing total disability," plaintiff's failure to refute the video's contents, and inability to submit current medical evidence).

Pylant also argues that Hartford abused its discretion because it found that she could perform her occupation despite having cognitive issues.  Pylant's Brief at 31-32. She bases this assertion on the fact that Dr. Cheatum stated that she "has a lot of pain and cognitive problems which further impair her from any gainful occupation at the present time and in the foreseeable future" and that "she is taking some medications that affect her cognitive function."  *Id.* at 31.  The court disagrees that Hartford abused its discretion.  First, these statements were made during the appeals process, *after* Dr. Cheatum met with Pylant's attorney.  Hartford's Response at 14.  In addition, despite his conclusion that these medications impaired Pylant's functioning, Dr. Cheatum neglected to mention either the type of medications or the extent to which Pylant was affected.  *See generally* Hartford's Appendix at 200-01.  There was

no mention of cognitive impairment earlier in the administrative record, and during Pylant's in-person interview, Pylant stated that she was taking no medications and had not filled a prescription relating to her disability in a year.  Hartford's Response at 14.  Finally, Dr. Trock's independent review of all Pylant's medical records and surveillance footage did not result in a finding of cognitive difficulty.  *Id*. (noting that, "assuming that Plaintiff was taking the same medications" as prescribed for her earlier, "Dr. Trock considered that Plaintiff was taking these medications when he issued his report opining that Plaintiff could return to work").  Without further information, the court cannot conclude that Hartford abused its discretion when it chose not to rely upon Dr. Cheatum's sudden, conclusory statements regarding Pylant's alleged cognitive impairments.  See also *Gooden*, 250 F.3d at 333-34 (no abuse of discretion when administrator did not give treating physician's changed opinion determinative weight because it was contrary to the physician's previous opinion, was offered after plaintiff discovered he was to be terminated, and was unaccompanied by evidence that plaintiff's medical condition had changed from the time of the most recent evaluation).

Although the administrative record contains material supporting Pylant's claim for LTD benefits, the court finds that Hartford's denial was reasonable considering the quality and quantity of the evidence as a whole.  See *Delta Family-Care Disability and Survivorship Plan v. Marshall*, 258 F.3d 834, 841 (8th Cir. 2001) (explaining that

a decision to deny benefits need not be the only sensible one, as long as a reasoned explanation based on the evidence is offered for the outcome), *cert. denied*, 534 U.S. 1162 (2002). The court can find no law to suggest that, if a plaintiff's argument has evidentiary support, the defendants abused their discretion when they concluded -- based on substantial evidence -- that benefits should be terminated. See *Ellis*, 394 F.3d at 273. The court is sympathetic to Pylant's situation, but under the deferential standard with which the court reviews Hartford's decision to deny benefits, it cannot conclude that Hartford abused its discretion. Summary judgment must be granted in the defendants' favor. See *Vega*, 188 F.3d at 297 (the "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision [fell] somewhere on a continuum of reasonableness -- even if on the low end").

## III.  CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment is **GRANTED** and the plaintiff's motion is **DENIED**.

**SO ORDERED**.

April 20, 2006.

_____
A. JOE FISH
CHIEF JUDGE